**HONCHELL et al., Appellants,**

v.

**GENERAL ELECTRIC COMPANY, Appellee.**

[Cite as *Honchell v. Gen. Elec. Co.* (1995), 100 Ohio App.3d 527.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930667.

Decided Jan. 31, 1995.

*Karen F. Marler,* for appellants.

*Graydon, Head & Ritchey, Michael R. Barrett,* and *Daniel E. Burke,* for appellee.

*Per Curiam.*

Plaintiffs-appellants, Wanda Honchell and Norman Honchell, filed a complaint against General Electric Company ("GE"), defendant-appellee. Wanda Honchell claimed that she was injured when GE assigned her to a job in which it knew that injury was substantially certain to occur. Norman Honchell claimed that he suffered loss of consortium because of the injuries that his wife subsequently sustained. The trial court entered summary judgment against the Honchells, and from that judgment they appeal.

Wanda Honchell was an employee at the GE Evendale plant in Hamilton County, Ohio. As an employee, she was a member of the United Automobile, Aerospace and Agricultural Implement Workers union ("UAW"), which represented the employees in their relationship with GE. That relationship was governed largely by a GE/UAW collective-bargaining agreement ("CBA"). In 1988, Honchell's specific work assignment at GE was at the engine frame assembly department ("EFA"). While performing her duties at EFA, Honchell severely injured her left shoulder lifting a forty-five-pound fixture. Because of that injury, Honchell did not work at GE for approximately two years. In 1990, after receiving temporary total disability on workers' compensation, she prepared to return to work. Honchell received a physical examination by her physician,

Dr. Lawhon, who placed certain restrictions on her work activities. Those restrictions were that she could not lift more than thirty-five pounds, she could engage only in low-impact activity, and she could use her arm only in a limited manner.

When Honchell returned to work, she met with Ed Lehman of GE's personnel department. Lehman concluded that she could not perform her duties at EFA with Lawhon's restrictions. In addition, fellow employees, union representatives, and a GE supervisor expressed concern that Honchell would be reinjured if she worked at EFA. Finally, Wayne Reynolds, a union official, warned Perry Engstrom, senior resource representative, that GE could face an intentional-tort action if it reassigned Honchell to EFA. On July 25, 1990, despite these warnings, Engstrom ordered her to return to work at EFA.

In December 1990, while working at EFA, Honchell suffered recurring symptoms in her shoulder. She also experienced complications, including chronic pain and depression. Even though Honchell later was transferred to fan-stators assembly, her physical and psychiatric condition deteriorated. Honchell's distress became so unmanageable that on August 17, 1991, she was placed on medical leave.

On March 10, 1992, Honchell filed the complaint that is the subject of this appeal. In her complaint she claimed that GE, through its agents, assigned her to EFA, knowing that her injury was substantially certain to occur. These allegations stated the elements of a workplace intentional tort under *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. In granting summary judgment for GE, the trial court held that her claim was preempted by Section 301 of the Labor Management Relations Act ("LMRA"), Section 185, Title 29, U.S.Code. For the reasons that follow, we agree.

In her sole assignment of error, Honchell claims that the trial court erred when it granted summary judgment against her on the intentional-tort claim. A court correctly grants summary judgment when there are no genuine issues of material fact, and the moving party is entitled to prevail as a matter of law. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; Civ.R. 56.

Section 301 of the LMRA states that suits for contract violations between employers and labor organizations may be brought in federal district court.[1] In a

---

1. Section 301(a) of LMRA states, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * or

suit by an employee, if the resolution of a state-law claim requires the interpretation of a CBA, the state claim is preempted by Section 301. For example, in Wisconsin, a state tort law prohibited bad-faith handling of claims under a CBA disability plan. *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 203, 105 S.Ct. 1904, 1907, 85 L.Ed.2d 206, 210. An employee, who was covered by a CBA, sued her employer under the state bad-faith law. The CBA, however, also dealt with disability claims. *Id.* at 215, 105 S.Ct. at 1913, 85 L.Ed.2d at 217–218. The employee's right to receive benefits and the employer's reasonableness in paying claims could be determined by the Joint Plant Insurance Committee. *Id.* Therefore, because the employer's performance on the disability claims could be determined only by interpreting the terms of the agreement, the state bad-faith tort was preempted. *Lueck,* 471 U.S. at 215–16, 105 S.Ct. at 1913, 85 L.Ed.2d at 217–219; see, also, *United Steelworkers of America v. Rawson* (1990), 495 U.S. 362, 371, 110 S.Ct. 1904, 1910, 109 L.Ed.2d 362 (union's duty to its members defined by terms of CBA).

On the other hand, when a state-law claim can be resolved without interpreting the CBA, the claim is independent of the agreement and is not preempted. *Lingle v. Norge Div. of Magic Chef, Inc.* (1988), 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410, 423–424. Even though exactly the same facts may need to be addressed to resolve the state-law and the CBA claims, if the state claim can be resolved without interpreting the agreement, Section 301 does not preempt. *Id.* Applying this reasoning, the Court in *Lingle* held that a claim for retaliatory discharge under Illinois law was not preempted by Section 301. *Id.* This court reached a similar conclusion in *Haynes v. Zoological Soc. of Cincinnati* (Dec. 22, 1993), Hamilton App. Nos. C–910598, C–910635, unreported, 1993 WL 538977 (Ohio Whistleblower Act); see, also, *Livadas v. Bradshaw* (1994), 512 U.S. ——, ——, 114 S.Ct. 2068, 2078–2079, 129 L.Ed.2d 93, 109–111; *Hawaiian Airlines, Inc. v. Norris* (1994), 512 U.S. ——, ——, 114 S.Ct. 2239, 2251, 129 L.Ed.2d 203, 220 (applying Section 301 analysis to Railway Labor Act preemption of state whistleblower act).

In response to these directives, the United States Sixth Circuit Court of Appeals has developed a two-part test, which this court finds persuasive in resolving Section 301 preemption issues. *DeCoe v. Gen. Motors Corp.* (C.A.6, 1994), 32 F.3d 212, citing *Terwilliger v. Greyhound Lines, Inc.* (C.A.6, 1989), 882 F.2d 1033, 1037. The court must ascertain whether the right claimed by the plaintiff is created by the CBA or by state law. *DeCoe,* 32 F.3d at 216. The court must also determine whether proof of the state-law claim requires interpre-

tation of CBA. *Id.* If the right is born of state law and does not invoke contract interpretation, then Section 301 does not preempt the state claim. *Id.* If the right is created by the CBA or involves interpreting the CBA, the claim is preempted. *Terwilliger*, 882 F.2d at 1038.

■ Here, under the second prong of the *Terwilliger/DeCoe* test, the rights that Honchell seeks to assert are those under state intentional-tort law. The elements of this tort, first enunciated in *Blankenship*, are as set forth in *Fyffe*. The employer may be liable for an intentional tort if (1) the employer knew of a danger within its business operation, (2) the employer knew that if the employee was exposed to that danger, the employee was substantially certain to be harmed, and (3) the employer required the employee to perform the dangerous task. *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

■ The pertinent portion of the CBA states:

"An employee returning to work following an absence because of personal illness or injury and who is able to perform the work will, seniority permitting, be returned to his/her former job, shift and work group. When seniority does not permit an employee to return as above, such employee will then be placed in the same manner as a surplus employee, in accordance with Article XIII—Reduction of Forces and Increasing Forces, providing such employee is able to perform the work."

Honchell's claim, therefore, asserts a state right—the right to sue an employer for an intentional tort. Nevertheless, to determine if the employer's conduct was wrongful within the circumstances of that claim, the court must view the employer's acts in light of the requirements of the return-to-work provision of the CBA. As a consequence, the court would be required to interpret the CBA, and Honchell's state claim thus is preempted by Section 301. Accord *Van Deusen v. St. Regis Paper Co.* (June 7, 1990), Cuyahoga App. No. 57108, unreported, 1990 WL 75201.

Because there are no genuine issues of material fact, the trial court correctly granted GE summary judgment as a matter of law. The assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., GORMAN and M.B. BETTMAN, JJ.