**DRYDEN, Appellant,**

v.

**CINCINNATI BELL TELEPHONE COMPANY et al., Appellees.**

[Cite as *Dryden v. Cincinnati Bell Tel. Co.* (1999), 135 Ohio App.3d 394.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980864.

Decided Aug. 20, 1999.

*William Flax,* for appellant.

*G. Richard Wilson* and *Amy B. Spiller,* for appellees.

GORMAN, Judge.

The plaintiff-appellant, Charles Dryden, appeals from the order of the trial court granting the defendants-appellants, Cincinnati Bell Telephone Company and three of its employees, summary judgment in an action that arose out of Dryden's termination by the company. Dryden's action included claims against the individual defendants for tortious interference with his contractual relationship with Cincinnati Bell, invasion of privacy, and defamation. His action against Cincinnati Bell alleged claims of defamation and tortious interference with his "rights to due process and legal redress." He asserts in his sole assignment of error that summary judgment was improper with respect to each of these claims. For the reasons that follow, we affirm.

## I

At the time of his termination, Dryden, a seventeen-year employee of Cincinnati Bell, was a member of the union Communication Workers of America. The parties do not dispute that the conditions of his employment were subject to the collective-bargaining agreement between the union and Cincinnati Bell. On the night of March 6, 1996, Dryden brought to work with him, in a zippered-leather fanny pack, a handgun. He kept the pack in a locker during his shift. There is no evidence that the fanny pack bore a nametag or any other indicia of its ownership.

When Dryden's shift ended the next morning at seven o'clock, he retrieved the fanny pack from his locker and put it on a shelf, used by employees to store miscellaneous objects, before going out to salt the sidewalk. While he was outside, an unnamed coworker lifted the pack to gain access to a computer printer. The unnamed employee remarked that the pack felt like it bore a handgun inside. George Johnston, another coworker who was standing nearby, overheard the remark and proceeded to unzip the pack, discovering the firearm inside. Johnston denied otherwise "rummaging through the fanny pack."

Dryden subsequently returned and, unaware that the fanny pack had been opened and the firearm discovered, retrieved it and then left the premises. Johnston and other coworkers subsequently reported the discovery of the weapon to their supervisor. Later in the evening, Dryden received a conference telephone call from the company's chief of security; a person he described as his "boss's boss," Carl Widner; and a third person whom he described as either the president or the secretary of the union local. Dryden testified that he. was informed that he had violated company security by bringing a firearm onto the premises and that his employment was being terminated. Dryden testified that he never once returned to the company's premises afterward.

A grievance was filed under the collective-bargaining agreement on Dryden's behalf. The grievance was denied. Although arbitration was available under the agreement, the union did not pursue any further remedies to reinstate Dryden.

## II

In its motion for summary judgment, Cincinnati Bell argued that Dryden's action was completely preempted, against both the individual defendants and Cincinnati Bell, under Section 301 of the Labor Management Relations Act, Section 158, Title 29, U.S.Code. That section provides that suits for violations of contracts between employers and labor organizations are to be brought in federal court. According to Cincinnati Bell, although Dryden's action raises claims under state tort law, it is so inextricably interwoven with interpretation of the collective-bargaining agreement that state-court jurisdiction is preempted.

Initially we note that this court has in the past adopted the test for Section 301 preemption articulated by the Sixth Circuit Court of Appeals in *DeCoe v. Gen. Motors Corp.* (C.A.6, 1994), 32 F.3d 212, 216. The first part of that test asks whether the right claimed by the plaintiff is created by the collective-bargaining agreement as opposed to state law. The second question asks whether proof of the state-law claim requires interpretation of the collective-bargaining agreement. Only if the answer to both questions is negative is there

no preemption under Section 301. See *Honchell v. Gen. Elec. Co.* (1995), 100 Ohio App.3d 527, 530–531, 654 N.E.2d 402, 404.

■ Applying this test to the case before us, we begin with the first count of Dryden's complaint, in which he alleges that his fellow employees at Cincinnati Bell tortiously interfered with his contractual relationship with the company. It bears emphasis that this claim is not against the company, but only against the coworkers, as individuals, who went through his pack and then reported the presence of the firearm to supervisory personnel.

■ Before beginning our Section 301 analysis, we note that Ohio law recognizes both a claim of tortious interference with contractual (or business) relations and a claim of wrongful interference with an employment relationship. The two torts are not synonymous. Tortious interference with contractual or business relations does not require a showing of malice, and is largely an adaptation of the Restatement of the Law 2d, Torts (1979), Sections 766–767. See *Norwell v. Cincinnati* (May 28, 1999), Hamilton App. No. C–980366, unreported, 1999 WL 335025. The elements of the tort require that one intentionally and improperly interfere with the plaintiff's prospective contractual or business relations by (1) inducing or otherwise causing a third person not to enter into or continue the prospective relation, or (2) preventing the plaintiff from acquiring or continuing the prospective relation. *Id.* Whether the interference is improper or privileged depends upon several factors adopted from Section 767 of the Restatement of the Law 2d, Torts. Among these are (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests interfered with, (4) the interests sought to be advanced by the actor, (5) the societal interests in protecting the freedom of action and the contractual interests of the plaintiff, (6) the proximity or remoteness of the interference, and (7) the relations of the parties. *Id.*

■ On the other hand, the tort of wrongful interference with an employment relationship requires a showing of either wanton or malicious behavior. See *Contadino v. Tilow* (1990), 68 Ohio App.3d 463, 467, 589 N.E.2d 48, 50, citing cases. As this court has observed more recently:

"Under Ohio law, the right to non-interference in an employment relationship is limited. In *Anderson v. Minter* [(1972), 32 Ohio St.2d 207, 61 O.O.2d 447, 291 N.E.2d 457], the Ohio Supreme Court held that a plaintiff could not bring an action for tortious interference against her former supervisor because an action did not exist when the act complained of was within the defendant's duties. But the court noted that an action may be maintained against an 'outsider' to an employment relationship. The court also stated that a cause of action may be recognized against an outsider for malicious interference, but the court cautioned that liability must be predicated on a finding of malicious conduct." *Wilson v.*

*Procter & Gamble Co.* (Nov. 6, 1998), Hamilton App. No. C–970778, unreported, 1998 WL 769718.

Obviously, the right of noninterference is a creation of state law, and not the collective-bargaining agreement. Therefore, the answer to the first part of the *DeCoe* test is negative. The next question is whether resolution of the claim would necessarily require interpretation of the collective-bargaining agreement. Cincinnati Bell argues that it would because one of the elements of a tortious-interference claim is whether there has been a breach of contract. This case, however, does not involve an alleged breach of contract but, rather, an undisputed discharge from employment. Further, the claim that others wrongfully procured the discharge does not require that we interpret the collective-bargaining agreement because there has been no cogent evidence offered to show that the agreement contains provisions governing the conduct of Dryden's coworkers in the particular situation before us.

We hold, therefore, that Dryden's interference claim is not preempted under Section 301. Even though it is not preempted, however, we hold that the claim fails as a matter of law on the record before us, regardless of whether the tort is viewed as one for wrongful interference with contractual relations or one for wrongful interference with employment. The reason is simple: on this record, there is no evidence that the interference was wrongful, let alone malicious.

The act of interference with Dryden's employment was not the opening of the pack—any wrong attached to that act was a matter strictly between Dryden and his coworkers—but the communication of its contents to Dryden's superiors. There is no allegation that what the coworkers told their supervisor was in any way false. According to Section 772 of the Restatement of the Law 2d, Torts, one who intentionally causes a third person not to perform a contract does not do so improperly by giving the third person truthful information.

Furthermore, even if the opening of the bag is considered part of the act of interference, there is no evidence that Dryden's coworkers were motivated by anything but genuine concern when it appeared to contain a weapon. The record gives no indication that the bag had a nametag or any other identification when it was placed in a common area and abandoned by Dryden as he went to salt the sidewalk. (Dryden testified that he kept his company identification *inside* the bag.) There is, further, no evidence that any of the coworkers recognized the unmarked pack as one belonging to Dryden.[1]

---

1. The only indication in the record as to how the ownership of the pack was determined is Johnston's statement that he saw Dryden retrieve it after Dryden returned from salting the sidewalk.

An unnamed employee lifted the pack to move it away from the printer and felt the contours of a weapon. Without any evidence that the pack was recognized to belong to Dryden, all the record demonstrates, at this point, is the discovery of an unidentified bag likely bearing a weapon in the middle of the workplace. Under these circumstances, without evidence that the coworkers opened it for any other reason than a concern for safety, we hold as a matter of law that the interests of the coworkers outweighed the interest of Dryden in protecting the contents of the pack.

We also note, in balancing the respective interests, that the act of carrying a weapon concealed in a leather bag is a criminal act. Dryden, in fact, asserted the Fifth Amendment privilege when asked in deposition whether the pack contained a firearm.

We hold, therefore, that the trial court properly granted summary judgment on the first count of the complaint.

In the second count of his complaint, Dryden asserted that his coworkers tortiously invaded his privacy by opening the fanny pack. In order to establish this claim, Dryden was required to produce evidence that the fanny pack was private, and that the intrusion by his coworkers was unwarranted and offensive or objectionable to a reasonable person. *Contadino,* 68 Ohio App.3d at 470–471, 589 N.E.2d at 53.

Cincinnati Bell argues that this claim is preempted under Section 301 because it is necessary to interpret the collective-bargaining agreement in order to ascertain Dryden's expectation of privacy in the workplace. This argument would have merit if Cincinnati Bell could only point to some provision in the collective-bargaining agreement that genuinely addresses the privacy of its employees in the workplace. However, the company can point only to language in the company's "Code of Business Conduct" that requires employees not to adopt personal lifestyles that impair the work performance of themselves or their coworkers or that reflect negatively on the reputation of the company in the community. Unless one considers the carrying of a concealed weapon into the workplace as the adoption of a personal lifestyle—which we do not—this language is simply too far afield to have preemptive force here.

We hold, therefore, that Dryden's tortious-invasion-of-privacy claim is not preempted under Section 301. However, again we are convinced on the merits that there was insufficient evidence on this claim to withstand the company's motion for summary judgment. The problem with the claim is the absence in the record, as we have already pointed out, of any evidence to demonstrate that the pack bore any outward indicia of its ownership, or that any of Dryden's coworkers recognized the pack as one belonging to him. The

question becomes, then, whether the coworkers were warranted in opening a pack of unknown ownership appearing to contain a firearm for the limited purpose of determining whether there was indeed a weapon inside, without intruding any further into the contents of the pack once the weapon was discovered. On the state of this record, we think it beyond reasonable debate that the coworkers' minimal intrusion was neither so unwarranted nor so objectionable as to constitute an actionable invasion of privacy.

Nor, it should be pointed out, does the record demonstrate that Dryden had a privacy interest in the fact, once discovered, that he had brought a weapon to work. There is not the slightest evidence of record that would support the conclusion that a worker at Cincinnati Bell could reasonably expect coworkers not to tell their superiors that he had brought a gun into the workplace.

In his third count, Dryden asserted a claim of defamation against his coworkers. Again Cincinnati Bell argues that this claim is preempted because it would require this court to "examine the customs and practices of [the company] workplace," which are governed by the collective-bargaining agreement. Again, however, the company can point only to broad language in the "Code of Business Conduct" concerning personal lifestyles and safety. None of this language has anything in particular to do with defamation, unless spreading untruths about another is considered either a lifestyle choice or necessary to company safety— neither of which propositions we find tenable.

As with the other claims, however, Cincinnati Bell need not rely on the doctrine of preemption to dispose of it, since the record is completely bereft of any evidence of defamation. To establish a claim of defamation in a business or professional context, it is necessary to demonstrate not only that representations were made that were untrue, but that they were made with actual malice. *Contadino*, 68 Ohio App.3d at 469–479, 589 N.E.2d at 52. In the instant case, there is no evidence that any untruthful representations were made by anyone, or that anyone acted with any sort of malicious intent. Although Dryden alleged in his complaint that his coworkers went to the company with an "exaggerated" report, upon deposition he admitted that he did not know what was said and to whom. All the record establishes is that Dryden's coworkers communicated to their supervisors that Dryden had a gun on the premises, which he has never denied. One cannot defame another by conveying the truth.

It should also be pointed out that Dryden argues in his brief that, by opening his pack, his coworkers committed a form of trespass to chattel. His complaint, however, does not contain any such claim. Further, although such an actionable tort apparently exists, the authority for it in Ohio has been described as "extremely meager." See *CompuServe, Inc. v. Cyber Promotions, Inc.*

(S.D.Ohio 1997), 962 F.Supp. 1015, 1020, citing cases. The general rule is that the action will not support a claim for nominal damages. *Id.;* see, also, Prosser, Law of Torts (4 Ed.1971) 77, Section 14; Restatement of the Law 2d, Torts (1979), Section 218, Comment *e.*

 Moreover, the interference has to amount to more than intermeddling. According to Section 218 of the Restatement 2d, Torts, a trespasser to chattel is liable "if, but only if," one of the following occurs:

"(a) he dispossesses the other of the chattel, or

"(b) the chattel is impaired as to its condition, quality, or value, or

"(c) the possessor is deprived of the use of the chattel for a substantial time, or

"(d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest."

None of these situations can be said to apply here, where the evidence establishes only that Dryden's coworkers momentarily opened the bag while it was not in Dryden's possession, and where there is no evidence of damage to the chattel.

 Finally, Dryden brought a claim of tortious interference with his "rights of due process and legal redress." According to the complaint, Cincinnati Bell committed this tort by (1) failing to cooperate with Dryden's "representatives in the administrative procedure," (2) withholding information concerning Dryden's grievance, and (3) subsequently promulgating an express rule against carrying weapons in the workplace "in an attempt to justify the actions of the individuals involved."

Initially we note that any allegations that the company was involved in an unfair labor practice under federal law are preempted by Section 301. The allegation that the company punished Dryden for breaking a rule against bringing firearms into the workplace that was not in effect until after he was fired is inextricably intertwined with the question whether Dryden was terminated for just cause under the collective-bargaining agreement, a matter that he failed to pursue by foregoing arbitration. We note in this regard that the memorandum circulated to employees upon which this claim is based was one expressly prompted by the Kentucky Senate's approval of a bill that would permit Kentuckians to carry handguns, concealed or otherwise. Furthermore, the memorandum stated that, because of the legislative activity, Cincinnati Bell had found it appropriate to "reiterate" the company's policy regarding weapons, not to promulgate a new rule. As for the other allegations that the company attempted to conceal information, including the names of Dryden's coworkers

who were involved in the opening of the pack, Dryden has simply submitted no colorable evidence of this happening sufficient to withstand summary judgment.

Accordingly, Dryden's sole assignment of error is overruled, and the judgment of the trial court affirmed.

*Judgment affirmed.*

DOAN, P.J., and PAINTER, J., concur.