[Cite as *Hetmanski v. Doe*, 2017-Ohio-7220.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO


JILL HETMANSKI,                          :        **O P I N I O N**

      Plaintiff-Appellant,         :

    - vs -                             :        **CASE NO. 2016-T-0123**

JANE DOE, a.k.a. TIMOTHY SHAFFNER,   :
et al.,

      Defendant-Appellee.          :


Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2015 CV 01518.

Judgment: Affirmed.


*Michael D. Rossi*, Guarnieri & Seacrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant).

*Susan S.R. Petro* and *Richard A. Williams*, Williams & Schoenberger Co., L.L.C., 338 South High Street, Second Floor, Columbus, Ohio 43215; *Thomas G. Carey, Jr.*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite 500, P.O. Box 1510, Warren, Ohio, 44481 (For Defendant-Appellee).


TIMOTHY P. CANNON, J.

{¶1}    Appellant, Jill Hetmanski, appeals from the December 6, 2016 judgment of the Trumbull County Court of Common Pleas.  The trial court granted appellee, Timothy Schaffner's, motion for summary judgment.[1]  For the following reasons, the judgment of the trial court is affirmed.

---

1. Appellee's last name is spelled incorrectly in the caption of the second amended complaint.  The correct spelling is "Schaffner."

{¶2} Appellant was a social worker at Trumbull Memorial Hospital ("TMH"). She was terminated from that position in July 2015. The following events preceding her termination are largely undisputed facts summarized from the depositions and briefs in the record.

{¶3} On July 5, 2015, a woman gave birth at TMH and wished to give up her child for adoption. Appellant was the social worker who assisted the birth mother with finding a suitable placement for the child.

{¶4} TMH has an adoption process for what are termed "Safe Haven" adoptions. A "Safe Haven" adoption occurs when a mother wants to give up a newborn for adoption but has not made arrangements to do so prior to birth. The hospital facilitates the adoption through an agency, either Trumbull County Children Services Board ("CSB") or a private adoption agency. Working with an agency ensures that the newborn is placed and discharged safely.

{¶5} In the present case, appellant counseled the birth mother about CSB and a number of private adoption agencies, but the mother expressed she was not interested in working with an agency, believing an adoption without agency intervention would proceed more quickly. The birth mother requested to have the newborn privately placed without agency intervention. At the birth mother's request, appellant made calls to several physicians to determine whether they knew of any families seeking to adopt a newborn. Appellant found an interested family and provided the birth mother with a name and phone number for the family. Appellant advised she could not assist the birth mother in the adoption beyond that limited measure.

**{¶6}** Arrangements were made to have the child placed with the adoptive family. However, when the prospective adoptive parents' complaint for custody was presented to the Trumbull County Juvenile Court, the court declined to discharge the baby to the adoptive parents because their home study was either incomplete or invalid. The court contacted appellee, the executive director at CSB, to inquire into the status of the home study and about whether CSB was involved with the case.

**{¶7}** Meanwhile, Anthony Seminaro, TMH's Chief Financial Officer, received information regarding concerns about the process used to facilitate the adoption of a baby delivered at TMH. Mr. Seminaro; Laurie Barber, TMH's Chief Nursing Officer; and Marsha LaPolla, the Director of Women's Services, met to discuss the concern. The adoption at issue was the one facilitated by appellant.

**{¶8}** Because TMH and CSB typically work together to facilitate adoptions, Ms. Barber also discussed the adoption situation with appellee. Appellee expressed concerns over the way appellant handled the adoption process and sent an e-mail to Ms. Barber.

**{¶9}** TMH conducted its own investigation to gather additional information on the procedure followed for the adoption at issue in order to determine whether the proper procedure was followed.

**{¶10}** Ms. Barber and Melissa Bennett, TMH's Chief Operating Officer, met with appellant and Loretta Rossi, appellant's union representative. On July 9, 2015, Ms. Barber and Ms. Bennett informed appellant of the concerns about the adoption, told her they were seeking information from her about the details of her involvement, and placed her on administrative leave.

3

**{¶11}** As part of the investigation, hospital staff was interviewed. Ms. Barber and Ms. Bennett also reviewed the medical record for the birth mother and baby, reviewed documentation appellant had provided, interviewed the physician who had admitted the birth mother, interviewed another physician who appellant had contacted about placement of the newborn, and reviewed TMH policy and procedure. They determined appellant had not followed TMH's procedure for Safe Haven adoptions when she found an adoptive family without agency intervention and provided the birth mother with the family's contact information.

**{¶12}** At the conclusion of the investigation by the hospital, on July 22, 2015, appellant's employment from TMH was terminated for engaging in conduct outside the scope of her practice as a TMH social worker and engaging in conduct detrimental to patient care.

**Procedural History**

**{¶13}** After her termination from TMH, appellant filed a complaint in the Trumbull County Court of Common Pleas alleging tortious interference with an employment relationship and a violation of her civil rights under 42 U.S.C. §1983. Appellant alleged appellee, while acting as an employee of CSB, interfered with her employment by falsely reporting to appellant's employer that she had engaged in illegal private adoption conduct and threatening to invite a state investigation into the adoption practices of her employer.

**{¶14}** The case was removed to the U.S. District Court for the Northern District of Ohio (Eastern Division). In federal court, appellee filed a motion for summary

4

judgment on June 14, 2016. After all federal claims were dismissed, the case was remanded back to the Trumbull County Court of Common Pleas on June 28, 2016.

{¶15} Appellee's summary judgment motion with regard to the state law claim against him was the only claim remaining in the case. Appellant filed a brief in opposition on September 13, 2016.

{¶16} In his motion, appellee argued he was entitled to judgment as a matter of law because appellant could not substantiate the elements of her tortious interference with employment claim. Appellee referenced the record to demonstrate that he had not acted with malice when he discussed the adoption with appellant's employer and that, even if he had acted with malice, his conduct was not the proximate cause of appellant's termination.

{¶17} In appellant's brief in opposition, she maintained an issue of material fact existed. She argued appellee acted with malice when he discussed the adoption with her employer. Appellant alleged appellee was attempting to avoid embarrassment after the juvenile court contacted him for an explanation of why CSB was not involved in the adoption. Appellant suggested that CSB had refused to participate in the adoption process and was trying to cover up its mistake by accusing appellant of failing to involve CSB and arranging an illegal adoption. Appellant further alleged that appellee contacted TMH and threatened to have its illegal adoption practices formally investigated if appellant was not "dealt with." Appellant attached to her brief (1) her own affidavit, which incorporated her work notes, the information she provided to TMH during the investigation into the adoption, and her separation notice; (2) an affidavit from the birth mother, stating she was never contacted by CSB; (3) an affidavit from

5

appellant's union representative, Loretta Rossi, which incorporated the handwritten notes she took during the meeting between herself, appellant, Ms. Barber, and Ms. Bennett; and (4) a copy of TMH's Adoption and Foster Placement Policy.

**{¶18}** On December 6, 2016, the trial court granted appellee's motion for summary judgment. The trial court found appellant failed to demonstrate a genuine issue of material fact because there was no evidence before the court to support her position that appellee acted with malice when he contacted her employer. In addition, the trial court noted there was no evidence to rebut the statement of Ms. Bennett, TMH's Chief Operating Officer, that appellee had no involvement in the decision or investigation regarding the termination of appellant.

**{¶19}** Appellant filed a timely notice of appeal from the trial court's judgment on December 19, 2016.

**{¶20}** Appellant's sole assignment of error on appeal states:

**{¶21}** "The trial court erred in entering summary judgment in favor of Appellee, Timothy Schaffner."

**{¶22}** We review a trial court's decision on a motion for summary judgment de novo. *Fed. Home Loan Mtge. Corp. v. Zuga*, 11th Dist. Trumbull No. 2012-T-0038, 2013-Ohio-2838, ¶13, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "Thus, the court of appeals applies 'the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.'" *Id.* quoting *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

**{¶23}** Civ.R. 56(C) provides that summary judgment is proper when:

6

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶24}** "A party seeking summary judgment must specifically delineate the basis for which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 116 (1988). "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "[T]he moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.* (emphasis sic).

**{¶25}** If the moving party satisfies this initial burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

**{¶26}** In his motion for summary judgment, appellee met his initial burden of establishing, by reference to evidentiary material in the record, that there was no genuine issue of material fact and that appellant could not prove the elements of a claim for tortious interference with employment.

7

**{¶27}** Appellant failed to meet her reciprocal burden of demonstrating a genuine issue of material fact existed for trial because appellant's references to the record do not support her contentions that appellee acted with malice, nor is there an issue of fact with respect to proximate cause.

**{¶28}** "Tortious interference with an employment relationship 'occurs when one party to the relationship is induced to terminate the relationship by the malicious acts of a third person who is not a party to the relationship at issue.'" *Slyman v. Shipman, Dixon & Livingston, Co., L.P.A.*, 2d Dist. Miami No. 2008-CA-35, 2009-Ohio-4126, ¶11, quoting *Tessmer v. Nationwide Life Ins. Co.*, 10th Dist. Franklin No. 98AP-1278, 1999 WL 771013, *6 (Sept. 30, 1999); *see also Anderson v. Minter*, 32 Ohio St.2d 207, 213 (1972) ("Causes of action have been recognized against 'outsiders' for malicious interference with employment."). Accordingly, the elements of tortious interference with an employment relationship are (1) the existence of an employment relationship between plaintiff and the employer; (2) the defendant was aware of the relationship; (3) the defendant intentionally interfered with the relationship; and (4) the plaintiff was injured as a proximate result of the defendant's acts. *Hester v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 104415, 2017-Ohio-103, ¶37, citing *Costaras v. Dunnerstick*, 9th Dist. Lorain No. 04CA008453, 2004-Ohio-6266, ¶8.

**{¶29}** Tortious interference with employment requires evidence of wanton or malicious conduct. *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App.3d 394, 400 (1st Dist.1999) (citations omitted). Malice can either be "behavior characterized by hatred, ill will, or a spirit of revenge" or "extremely reckless behavior revealing a conscious disregard for a great and obvious harm." *Preston v. Murty*, 32 Ohio St.3d 334, 335

8

(1987). "[M]alice may be inferred from conduct and surrounding circumstances." *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 183 (1975) (citation omitted).

{¶30} With regard to malice, appellant maintains appellee acted maliciously when he contacted the hospital and made false accusations of fraud, deception, and criminal conduct against appellant. Appellant also contends appellee threatened a full investigation into the hospital's adoption practices unless it appropriately "dealt with" the matter.

{¶31} To support her contention that appellee acted maliciously, appellant refers to the e-mail sent from appellee to Ms. Barber on July 9, 2015. The e-mail states, in pertinent part:

> * * * We have very grave concerns about how this [adoption] transpired. Our emergency worker spoke to the mom this weekend. Mom was very cooperative and willing to work with us. When we followed up during business hours, mom stated she didn't want to go through the whole CSB process. She stated that Jill made the placement for her. My emergency worker stated that she has witnessed Jill doing this in the past. My Clinical Administrator, who served on the Counselor and Social Worker Board in the past, feels this is a violation of their Laws and Rules. We are required to report this.
>
> My in house legal staff feel that there may have been violations of the Ohio Revised Code. A quick review of the applicable sections indicate that what she did could constitute Obstructing Official Business because she prevented/obstructed/delayed our abilities to perform our official business duties in placing dependent children. She was deceptive/fraudulent in her representation to us that a private adoption agency would be contacted. * * * Please don't consider this an adversarial message. * * * My goal is to simply share information with a good partner so that you can evaluate the situation as effectively as possible. Thank you for being so responsive to this situation.

{¶32} Appellant also cites to her own affidavit in which she states that during her meeting with Ms. Barber, Ms. Bennett, and Ms. Rossi, Ms. Bennett stated

9

that she received a call from CSB – refusing to identify the CSB caller; that the caller identified [appellant] as participating in a certain black-market adoption, i.e., [natural-mother's] placement for adoption; that the caller also told her that [appellant] had never contacted CSB or otherwise informed or included it in the placement's process, handling the entire matter herself in furtherance of arranging the adoption for a family [appellant] knew; that the caller wanted Affiant and the entire situation 'dealt with' immediately, failing which CSB would contact 'the State' to report that the hospital (TMH) was engaging in black-market adoption practices; that she [Ms. Bennett] was already in contact with 'our attorneys,' and that the matter was 'serious,' to be looked at 'closely.'

Further, in her brief in opposition to summary judgment, appellant included an affidavit from Ms. Rossi, which incorporated notes Ms. Rossi took during the meeting. The notes are a summary of what was discussed during the meeting, and they attribute to Ms. Bennett a statement that "CSB called administration accusing [the hospital] of illegal adoption practices."

{¶33} Appellant's references to the record do not support her assertions that appellant contacted TMH to make false accusations about appellant. Appellee's e-mail to Ms. Barber only suggests that appellant and TMH *may* have violated certain laws and regulations in handling the subject adoption. Appellee made no threats in the e-mail. Furthermore, the record reflects that appellee subsequently informed Ms. Barber that after further investigation, CSB would not report to the board because there was no clear violation of the rules and regulations. This was prior to appellant's termination. Appellee, as the director of an agency that works with TMH to facilitate adoptions, was alerting TMH to an instance where the proper processes for facilitating an adoption may not have been followed.

10

{¶34} Although appellant provided an affidavit from the birth mother stating CSB never contacted her to facilitate the adoption, this is not evidence that appellee was being untruthful in his e-mail when he stated his emergency worker spoke to the birth mother. Appellee was simply relaying to TMH a concern based on information he had received from one of his emergency workers. The affidavit from the birth mother brings the accuracy of that information into question, but it is not evidence that appellant was being untruthful or malicious.

{¶35} Furthermore, the statements attributed to Ms. Bennett in appellant's affidavit and in Ms. Rossi's notes do not identify appellant as the person from CSB who made the call to TMH. Appellant provided an interrogatory answer from appellee, stating he contacted the hospital on July 8, 2015; however, the interrogatory does not state with whom appellee spoke, and it explicitly denies that the call concerned appellant's employment. Further, in her affidavit, appellant did not attest to the date of the alleged conversation between Ms. Bennett and appellee.

{¶36} Even if appellee had acted with malice, appellant has failed to demonstrate an issue of material fact that appellee's actions were the proximate cause of appellant's termination. Appellant maintains appellee's contact with the hospital was the proximate cause of appellant's discharge because TMH "jumped" when appellee called, placing appellant on administrative leave the very morning of his call; the hospital proactively sought out grounds for firing appellant; and appellant's job description, and the hospital's adoption and placement policies, belied its stated grounds for appellant's termination.

{¶37} "'"[I]t is generally true that, where an original act is wrongful * * * and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability."'" *Doyle v. Fairfield Machine Co., Inc.*, 120 Ohio App.3d 192, 210-211 (11th Dist.1997), quoting *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287 (1981), quoting *Clinger v. Duncan*, 166 Ohio St. 216, 222 (1957). "Even where an act is not the sole cause of the injury, that act can still be sufficient to satisfy the element of proximate cause so long as it put in motion the sequence of events leading to the injury." *Id.* at 211, citing *Garbe v. Halloran*, 150 Ohio St. 476 (1948), paragraph two of the syllabus.

{¶38} Although the record demonstrates that TMH conducted an investigation after appellee expressed his concerns, the evidence also shows the hospital was not conducting the investigation only because of appellee's concerns. Mr. Seminaro had also expressed a concern about the way the subject adoption was handled and conducted a meeting with Ms. Barber and Ms. LaPolla to discuss the call he received regarding the adoption. It is unrefuted that the administrators initiated an independent investigation to gather more information. In her deposition testimony, Ms. Bennett explained: "[W]e had no opinion about whether something was or wasn't [done correctly], which is the purpose of starting an investigation." During the investigation, appellant's own documentation showed that she did not work with an agency to ultimately facilitate the adoption. Appellant documented that she contacted physicians to find an adoptive family and provided appellant with contact information for a family. Ms. Bennett testified, "Jill documents at that point not following the process." Ms.

Bennett further explained that when the birth mother was unwilling to work with either CSB or a private adoption agency, appellant should have worked up the chain of command at TMH instead of facilitating an adoption without an agency.

{¶39} Additionally, the trial court noted that appellant did not present any evidence to rebut the testimony of Ms. Bennett that appellee had no "involvement in the decision or investigation regarding" appellant.

{¶40} Appellant has failed to present evidence to create a genuine issue of material fact with regard to proximate cause. Therefore, even if appellee had acted maliciously, appellee was entitled to judgment as a matter of law on that basis.

{¶41} Appellant's sole assignment of error is without merit.

{¶42} The judgment of the Trumbull County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

13