## DANNERBURG v. ASHLEY.

1. EMPLOYE ENTITLED TO ACTION AGAINST PERSON MALICIOUSLY PROCURING HIS DICSHARGE FROM EMPLOYMENT.

   An action lies in behalf of an employe against a person who has maliciously procured the employer to discharge such employee from employment in which he is engaged under a legal contract, for a certain period, provided damage result to the employe from such discharge.

2. UNCERTAIN TERM OF SERVICE DOES NOT DEPRIVE HIM OF RIGHT OF ACTION.

   An action will also lie where the period for which the employment is to continue is not certain; if damage result from the discharge; even though from inability to ascertain the amount of the damage, a verdict for nominal damages only should result.

3. ACTION LIES AGAINST THIRD PERSON PROCURING DISCHARGE, ALTHOUGH NONE WILL BE AGAINST EMPLOYER.

   The fact that no contract, nor any legal right of the employee as against the employer is violated by the employer, or that no action can be maintained by the employee against the employer for such discharge, does not prevent a recovery against a third person who has maliciously procured the discharge, and which discharge would not have occurred but for such procurement.

HAYNES, J.

Petition in error was filed to reverse the judgment of the court of common pleas, for the reasons:

"1. The court erred in sustaining the demurrer to the plaintiff's original petition.

"2. The court erred in granting the motion of the defendant to require plaintiff to make his amended petition more definite and certain.

"3. Said court erred in granting the motion of the defendant to strike out from plaintiff's amended petition the portions described as one and two in the motion, and the part of paragraph three designated in motion, including the following words: 'Because he had given testimony adverse to said Toledo, Ann Arbor and North Michigan Railway.'

"4. The court erred in sustaining the motion of the plaintiff to strike out certain portions of the amended petition and to make certain other portions of his amended petition, as shown in the orders of said court.

"5. The court erred in sustaining the demurrer of the defendant to the second amended petition of plaintiff.

"6. The court erred in ordering the plaintiff's petition to be dismissed and rendering judgment in favor of defendant against the plaintiff for the costs."

The plaintiff in error filed a petition in the court of common pleas against the defendant in error, Harry W. Ashley and The Toledo, Ann Arbor and North Michigan Railway company, in which he set forth certain alleged grievances that he had against the defendants, and a motion was made to strike out portions of the petition, which was granted, and an amended petition was filed against Harry W. Ashley alone, and the railway company having dropped out of the suit, it discontinued as to that.

That was met by a motion again to strike out, and that motion, as to certain portions of the allegations of the petition, was allowed. Thereupon a second amended petition was filed, to which a demurrer was interposed, and that demurrer was sustained; and the plaintiff, not desiring to amend, a judgment was rendered for the defendant.

The amended petition is as follows:

"Plaintiff says that for many years before the happening of the occurrences hereinafter mentioned, he had pursued the employment of a railroad man, having been engaged in various branches of railroad service, in all of which he had given satisfaction to his employers and had thus been able to establish a reputation as a steady, reliable and competent railroad man, which was of great value to him.

"A short time before the 25th of December, 1889, a certain action was pending in the circuit court of the United States for the northern district of Ohio, wherein The Toledo, Ann Arbor and North Michigan Railway company was defendant, and one Clifford F. Eddy was plaintiff. In said case plaintiff had been subpœnaed as a witness against said railway company, and had given his testimony, which was given because required to be given, and was the truth; yet the managers of said railway company and Harry W. Ashley, its general manager, took offense at plaintiff's action in said case.

"Plaintiff says that on or about the 26th of December, 1889, plaintiff was and for sometime had been in the employ and service of the Pennsylvania Railway company, a railroad corporation operating a railroad between Toledo and other points eastward, in the capacity of yardmaster, for which service he was receiving a compensation at the rate of two dollars and thirty-five cents per day. Said employment was a continuous one, and under the arrangement he had with his employer would have continued uninterruptedly, and he would have continued to receive compensation at said rate for his service with the reasonable prospect of promotion to better positions with higher pay, had it not been for the malicious interference of the defendant, as herein complained of.

"The said defendant, Harry W. Ashley, being at said time the general manager of The Toledo, Ann Arbor and North Michigan Railway company, by virtue of his said position and by virtue of certain business arrangements for the use of the yard of said Pennsylvania company at Toledo, the exact nature of which the plaintiff does not know, had special influence with the managers of the Toledo division of the said Pennsylvania Railway company, the division with which plaintiff was connected.

"Plaintiff says that said Harry W. Ashley, with the intention of punishing said plaintiff because he had given testimony adverse to said Toledo, Ann Arbor and North Michigan Railway company, and wrongfully and maliciously contriving to injure this plaintiff in his means of livelihood, and to cause him to lose his situation, used his influence with the officers of said Pennsylvania company, and especially with J. W. Morris, the superintendent of the Toledo division thereof, and persuaded him to discharge this plaintiff from the service of said company.

"Plaintiff says he is informed and believes and so charges the fact to be, that among other means used to bring about his purpose, said Ashley maliciously represented to said Morris that this plaintiff had induced Clifford F. Eddy to bring his action against The Toledo, Ann Arbor and North Michigan Railway company, and that he, said plaintiff, was a person who promoted and stirred up law suits by railroad employees against

their employers, and was a mischief-maker, all of which accusations were false and without foundation.

"Plaintiff says that said Ashley's action was a malicious interference between him and his employer, and was intended to prevent plaintiff from pursuing peacefully and uninterruptedly plaintiff's service in the employ of the Pennsylvania company.

"That the said Pennsylvania company, through its officers (and) agents, actuated and influenced solely by the persuasions and representations of said Harry W. Ashley, refused longer to permit plaintiff to continue in its employ, after said December 26, 1889, although up to that time their relations had been harmonious, and the plaintiff's services satisfactory to his employers.

"Plaintiff says that a railroad man's reputation and ability to secure employment among the railroads of the country is greatly impaired by being discharged from the service of any railroad, and especially a railroad of the rank among railroad corporations of the Pennsylvania company; so he says he was injured in his position and reputation and means of support by the action of said defendant.

"Plaintiff says that after the loss of his place as aforesaid, he endeavored for a long time to secure other work, without avail, until the 16th of June, 1890, when he secured a place with another railroad company less desirable than the one he had lost.

"Plaintiff says that by the disgrace and humiliation he suffered by the injury to his reputation in his avocation by the unlawful and malicious acts of said defendant, he has been damaged in the sum of one thousand dollars, and that he was damaged in the sum of one thousand dollars by being deprived of his position and means of earning a livelihood.

"So he prays judgment against said defendant, Harry W. Ashley, in the sum of two thousand dollars, his damage as aforesaid."

The court of common pleas being of opinion that the third amended petition did not state a cause of action, sustained the demurrer, and judgment was rendered against the plaintiff.

The case is one which is of rather novel impression; at least no case of this kind is to be found, we believe, in the reported decisions of the supreme court of this state; and the question has been discussed ably and earnestly by counsel upon both sides of the case.

After giving the authorities cited very careful consideration, and after a full discussion of the question, we are of the opinion that the amended petition does state a cause of action against the defendant.

Before proceeding to discuss that a little, I may say that we are of the opinion that the action of the court in striking portions of the former petitions from the files was proper, for the reason that there were statements made in the nature of statements of evidence, and those matters, so far as we are able to see, are matters that the party would be entitled to offer in evidence upon the trial of the case under the allegations of his second amended petition.

The cases which have been cited by counsel for the plaintiff in error, are: 23 Florida, 206, and 26 Atlantic Reporter, 505, which is a case decided by the court of appeals of Maryland, and has not been received in the regular reports at our library yet.

Also, some other cases collateral to these and tending to elucidate the propositions found stated in those cases, and being: 11 East, 273; 107

Massachusetts, 505; 70 North Carolina, 601; 106 Massachusetts, 1; 70 Maine, 353; Schouler on Domestic Relations, 467; Cooley on Torts, 337, and some English cases.

The defendant, to maintain his proposition, cited the opinion of the court below: 13 Lea (Tenn.), 507; 32 Central Law Journal, 273; 12 Ohio St., 294; 75 Maine, 294; 75 Maine, 225 (*Heyward* v. *Tillson*).

The cases in 13 Lea and 75 Maine, which we have examined, are directly against the propositions that are contended for by the plaintiff in error.

The 23 Florida and the 26 Atlantic Reporter, are directly in favor, as we understand, of the propositions that are claimed by plaintiff in error. The majority of the decisions that are cited by the plaintiff, in regard to the relation of an employe to his employer, were as a general rule, cases where the action was brought by the employer against parties who had been inducing, seducing or driving away the employees from the employment of the employer. The right of an action of that kind seems to have been somewhat ancient; indeed, it is said to have arisen originally, or in part, out of a statute that was enacted by some ancient king of Great Britain—perhaps Edward I. But in the progress of the expansion of the common law, it has, by judicial decisions, come to cover a variety of cases where one party is engaged in some form to render services for another, as, for instance an actress to her general manager, and so, with an application where suits are brought for inducing, in some form, a person who has agreed to render services to another, from rendering the service to that other person, has been broadened out so that the class of cases is quite varied and quite extensive.

The cases in which actions have been brought by a person against another for inducing the employer to discharge the employee from his employment, are not very numerous, and yet it seems to us that they rest substantially upon the same principle as the other class of cases. The objection ordinarily urged in regard to this matter is, that there has been no violation of any contract between the employer and the the employe; that is to say, that in the class of cases where they have refused to maintain actions, at least, they have found that the employer had a right to discharge the employe at any time he saw fit, that the employment was one at will, so far as the employer was concerned. It is said that, perhaps, in some cases, where they had caused the violation of the contract between employer and employee, that a cause of action might arise. And it is urged that because the employer may discharge the party—has a right to do it at any time—that the employe has no remedy. And that seems to be the doctrine that is maintained, discussed and followed in the Tennessee case and in the main case to which I have referred; but it seems to us that that is not a proper statement of the gravamen of the cause of action, or of the substance of the cause of action. The cause of action—grievance, that is complained of is—that a third party, intending to injure the employe, has induced the employer to discharge him from his service, with intent that he may not have employment, that he may be cut off from employment, and that, therefore, he has been cut off from employment which was profitable to him, viz., to earn a living and to maintain himself and his family. It is not that as between him and the employer, the employer has done that which he had no legal right to do; it is that between him and the party that interfered wantonly to sever these relations and to break them up, he has a grievance, which it would seem to us is a legal grievance, and one

upon which he may maintain a right of action. It seems to us that it is no less a grievance to him, that the party has induced his employer to discharge him, than it would have been if the party had planted himself in front of the place of his employment and by force had prevented him from entering and performing the service and receiving the pay therefor.

The first case cited is the Florida case. I will read three propositions of the syllabus:

1. "An action lies in behalf of an employe against a person who has maliciously procured the employer to discharge such employe from employment in which he is engaged under a legal contract, for a certain period, provided damage results to the employe from such discharge.

2. "An action will also lie where the period for which the employment is to continue is not certain, if damage result from the discharge; even though, from inability to ascertain the amount of the damage, a verdict for nominal damages only should result.

3. "The fact that no contract, nor any legal right of the employee as against the employer is violated by the employer, or that no action can be maintained by the employe against the employer for such discharge, does not prevent a recovery against a third person who has maliciously procured the discharge, and which discharge would not have occurred but for such procurement."

That action was brought by a man named Atkinson against W. D. Chipley, who procured his discharge from the service of a firm named Kehoe & Walker, for whom he had worked and for whom he expected to work for some time, and it was also said with the promise that he might ultimately become a partner with them. A judgment was rendered in favor of the plaintiff for $740; but the judgment was set aside, more from general principles—for the reason that, upon some minor matters, the court had erred in its charge to the jury; but the general propositions which I have read, were maintained by the court upon argument of the question, and there is quite a full discussion, not only of the cases which have been cited by counsel, but of many other cases, in the course of the decision.

The Maryland case is the case of *Lucke* v. *Clothing Cutters' and Trimmers' Assembly*, No. 7507 K. of L. of Baltimore (Atlantic Rep., volume 26, page 505), and was decided by the court of appeals of Maryland, March 16, 1893. In that case Lucke who was a master cutter, had entered into the employment of a firm doing business—Rosenfeld Bros., doing business and trading as the "New York Clothing House." He was engaged at a salary of thirty dollars per week, under an agreement that they would take him upon trial and afterwards, if his work was satisfactory, they would give him permanent employment, but with the right of the employing company to discharge him at the end of any week. After he had been at work some little time the Clothing Cutters' and Trimmers' Assembly notified the clothing house to discharge him, because he was not a member of a certain Union. He had made application to become a member, but that was rejected, because, as they said, they had all the men they could care for at the present time, and they then reiterated the demand that he be discharged, and so the Clothing company discharged him at the end of a certain week. He sued, setting up a certain contract, and the right to recover was maintained by the court of appeals of Maryland, although the judgment itself was reversed for want of certain proofs, and it was sent back for a new trial

under the system of practice which seems to obtain in that state, whereby an amendment was to be made in the petition, and the case to be tried upon the facts of the case as found. But the court of appeals of Maryland (the citations are so long that I cannot read them), cite and approve this case of *Chipley* v. *Atkinson* in 23 Florida, and also cite other authorities to maintain the right of the plaintiff, Lucke, to maintain this action. I will read a little from the decision:

"The question of a contract *vel non*, enters into the consideration of this case, but upon proper averment in the declaration ought to play but a small part in its determination. 'Where a contract would have been fulfilled, but for the false and fraudulent representations of a third person, an action will lie against such person, although the contract could not have been enforced by action.' *Benton* v. *Pratt*, 2 Wend., 385. In the case of *Harvester Co.* v. *Meinhardt*, 9 Abb. N. C., 396, 397, the court said : 'A distinction has been sought to be made between the cases where there has been an unexpired time contract and cases where the services were by the day, or by the piece; but I do not think such a distinction rests upon any sound reason. * * * In such case the injury to the property and business of the employer would not consist so much in breaking the contract which existed, as in the loss of profit derived from the work of the laborer, if he continued in the employment and the probability or certainty of such loss would be, in each case a question of fact,' and, of course, for the jury. Mr. Addison, in his work on Torts (folios 9–14), thus summarizes the law: 'Interference by fraud or force with the free exercise of another's trade or occupation or means of livelihood is a tort; such as preventing people by the use of threats or intimidation, from trading with the plaintiff's vessel in a foreign port, or dealing at the plaintiff's shop, or sending their children to the plaintiff's place of business. * * * Where a violent or malicious act is done to a man's occupation, profession or way of getting a livelihood, there an action lies in all cases.'"

Then the court proceeds to discuss very fully the case of *Chipley* v. *Atkinson*, 23 Florida.

There is a case in 107 Massachusetts, which discusses the general principles at page 555, where many of the objections that are urged against the maintaining of this action were also urged against the maintaining of that action. That action, however, arose where parties were interfered with to induce them to leave the employer's service, and an action was brought, and the supreme court discuss many of the cases that have been referred to down to the time of that decision.

"The declaration, in its first count, alleges that the defendant did 'unlawfully and without justifiable cause, molest, obstruct and hinder the plaintiff from carrying on their business of manufacturing and sale of boots and shoes,' with the unlawful purpose of preventing the plaintiffs from carrying on their said business, and wilfully persuaded and induced a large number of persons who were in the employment of the plaintiffs, and others 'who were about to enter into' their employment, 'to leave and abandon the employment of the plaintiffs without their consent and against their will;' whereby the plaintiffs lost the service of said persons, and the profits and advantages they would otherwise have made and received therefrom, and were put to large expenses to procure other suitable workmen, and suffered losses in their said business.

" This sets forth sufficiently (1) intentional and wilful acts (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) actual damage and loss resulting.

" The general principle is announced in Com. Dig. Action on the Case, A: 'In all such cases where a man has a temporary loss or damage by the wrong of another, he may have an action upon the case to be repaired in damage. The intentional causing of such loss to another. without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong. This proposition seems to be fully sustained by references in the case of *Carew* v. *Rutherford*, 106 Mass., 1, 10, 11."

And the court therefore, held in that case that the action may be maintained.

While tne case, as I have stated, is, perhaps, somewhat novel in Ohio, still we are clearly of the opinion that upon the application of the principles laid down in these various cases, and upon the facts stated in the petition, the plaintiff below is entitled to maintain his action; that he is entitled to nominal damages, at least, if nothing more.

The judgment of the court of common pleas will, therefore, be reversed and the case remanded to the court of common pleas for further proceedings. The demurrer will be overruled.

*A. L. Smith*, for Defendant.

*J. K. Hamilton*, for Plaintiff.