CONTADINO, Appellant,

v.

TILOW et al., Appellees.

[Cite as *Contadino v. Tilow* (1990), 68 Ohio App.3d 463.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890201.

Decided July 3, 1990.

464

*William Flax,* for appellant.

*Michael J. Mooney,* for appellees.

---

*Per Curiam.*

The final order from which this appeal is taken is that which granted the motion of the defendants-appellees, Neil F. Tilow, Holly Dorna, and Talbert House, for summary judgment and which dismissed the complaint with prejudice.

It is apparent from the record that the appellant, Robert A. Contadino, a master's-degree-level psychotherapist, was a full-time employee at Talbert House from August 1970 until September 1986. From November 1981 until his dismissal, the appellant served as the Program Director of 281–CARE, a crisis intervention program which provided counseling, principally by telephone, to individuals whose personal difficulties often made them suicidal. In his capacity as program director, the appellant supervised a staff of approximately sixteen people. In addition to bearing responsibility for certain administrative duties, the appellant also provided direct counseling to CARE's clientele.

It is undisputed that since 1973 the appellant has suffered from an excruciatingly painful type of migraine headache, referred to as "cluster headaches." The appellant does not contest that this condition became chronic in 1983 and necessitated that he undergo heavy medication on medical supervision.

The events which gave rise to the appellant's dismissal began in September 1986 when appellee Neil Tilow, Executive Director of Talbert House, successfully persuaded the appellant to take a medical leave of absence to be evaluated by a team that included the appellant's own physician, a board-certified psychiatrist, and a doctorate-level psychologist. According to Tilow, he was acting upon information, gained from the CARE staff, that the appellant's cluster headaches, and the pain medication he was forced to take, had begun to deleteriously affect the appellant's job performance.

On November 6, 1986, the appellant's own physician, Dr. Smith, certified in writing that the appellant had been continuously disabled since September 11, 1986, and that it was unknown if and when such disability would cease. On November 13, 1986, Dr. Nizney, the psychiatrist among the evaluating team, wrote a letter to Tilow in which he expressed his opinion that the appellant was disabled by severe depressive disorder and cluster headaches. Accordingly, at the expiration of the appellant's medical leave on December 16, 1986, the appellant's employment with Talbert House was terminated by Tilow.[1]

The appellant' complaint in the action below presented two separate claims: tortious interference with the appellant's business or professional relationship with Talbert House, and defamation and invasion of privacy. The appellant now asserts as his sole assignment of error that the trial court erred in granting summary judgment in favor of the appellees on both claims.

## I

The question presented by the first claim is whether the appellees were entitled to judgment as a matter of law on the allegation that they tortiously interfered with the appellant's professional relationship with Talbert House. Civ.R. 56(C) states, in pertinent part, that upon motion and reply:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, timely filed in the action, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one

---

1. The appellant subsequently filed a grievance with the Talbert House Executive Committee and was afforded a hearing to protest his dismissal. On February 26, 1987, the executive committee advised the appellant in writing that the committee had agreed unanimously to affirm the decision of the executive director (Tilow) and deny the appellant's grievance. The appellant thereafter filed an unsuccessful charge with the Ohio Civil Rights Commission.

conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

■ The general rule in Ohio is that an employee earning a living has a right to pursue such employment free from unwarranted interference by third persons, and that one who maliciously or wantonly procures the discharge of an employee is liable to the employee in an action for damages. *Lancaster v. Hamburger* (1904), 70 Ohio St. 156, 71 N.E. 289; *Dannerberg v. Ashley* (1899), 5 Ohio C.D. 40, 10 Ohio C.C. 558. See, also, *Smith v. Klein* (1985), 23 Ohio App.3d 146, 23 OBR 387, 492 N.E.2d 852; *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235. Moreover, it has been held that this right of noninterference extends even to an at-will employee. *Dannerberg, supra; Smith, supra.*

■ However, the right of noninterference in an employment relationship is limited. There are those whose position vis-a-vis the employee and the employer entitles them to intrude upon the employment relationship. See, *e.g., Pearse v. McDonald's System of Ohio, Inc.* (1975), 47 Ohio App.2d 20, 1 O.O.3d 164, 351 N.E.2d 788. In *Anderson v. Minter* (1972), 32 Ohio St.2d 207, 61 O.O.2d 447, 291 N.E.2d 457, the Ohio Supreme Court held that the plaintiff could not bring an action for tortious interference against her former supervisor notwithstanding the allegation that he had maliciously induced her former employer to suspend her. The court observed:

"Causes of action have been recognized against 'outsiders' for malicious interference with employment. *Johnson v. Aetna Life Ins. Co.* (1914), 158 Wis. 56, 147 N.W. 32. Where, however, the act complained of is within the scope of a defendant's duties, a cause of action in tort for monetary damages does not lie. Nor can liability be predicated simply upon the characterization of such conduct as malicious. [Citations omitted.]

"As stated in *Johnson v. Aetna Life Insurance Co., supra,* 'Malice makes a bad case worse, but does not make wrong that which is lawful.'" *Anderson, supra,* at 214, 61 O.O.2d at 450, 291 N.E.2d at 461. See, also, *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144.

■ We find the holding in *Anderson* directly applicable in the case *sub judice* as regards appellee Tilow. The evidence conclusively establishes that, as Executive Director of Talbert House, Tilow had a duty to evaluate staff[2]

---

**2.** The Talbert House Personnel Policy Manual makes clear the authority of the executive director to put on probation, suspend, or terminate an employee. The appellant has not put into dispute Tilow's concomitant authority to initiate the medical evaluation which took place here, a process to which the appellant acquiesced.

and protect the corporation from any foreseeable legal liability. Accordingly, Tilow owed a duty of advice and action to Talbert House to advocate the appellant's dismissal if he thought it in the corporation's best interest.

Moreover, in the record before us in the instant case, we find that the appellant has failed to demonstrate an issue of material fact as to whether Tilow ever acted outside the scope of his office in the course of events leading to the appellant's dismissal. The appellant has identified as the "gravamen" of his complaint against Tilow the "List of Concerns" which Tilow presented to Dr. Nizney. The appellant contends that this document overstated the impact of his medical condition on his work performance. However, there has been no evidence adduced or argument made that Tilow, by composing this letter and mailing it to Dr. Nizney, exceeded his authority as executive director.[3] Indeed, the appellant has not effectively demonstrated that Tilow, as executive director, was officially constrained from presenting to the evaluating team any information that he thought relevant. Thus, in accordance with *Anderson,* we hold that, as a matter of law, an action in tort for malicious interference cannot lie against Tilow.

With regard to appellee Holly Dorna, she did not begin to work at Talbert House until after the appellant had been placed on medical leave. She was never in a position of supervision or authority vis-a-vis the appellant. It is therefore questionable whether the holding in *Anderson* affords her the same protection as it does Tilow. However, both Tilow and Dorna attest in their affidavits that Dorna did not prepare, or even help prepare, the "List of Concerns" which the appellant has identified as the "gravamen" of his complaint, and the appellant has presented no concrete evidence to demonstrate otherwise. Indeed, the only evidence concerning an alleged act of interference by Dorna involves certain remarks which Dorna purportedly made during a staff meeting. In her affidavit, however, Dorna attested to her belief at the time of their utterance that her remarks were true based upon information given to her. The appellant has failed to effectively rebut this assertion with any probative evidence from which a trier of fact could reasonably conclude that Dorna's remarks were maliciously intended.

The issues of privilege and malice aside, moreover, we note that it is an essential element in an action for tortious interference that the alleged interference bear a causal relationship to the breach or nonperformance of the contract. See *McDonough v. Kellog* (W.D.Va.1969), 295 F.Supp. 594 (applying

---

3. The appellant has produced no evidence to refute appellee Tilow's assertion in his affidavit that the "List of Concerns" was in response to a specific request by Dr. Nizney to Tilow for a description of the appellant's symptoms of illness which were causing Tilow concern.

Ohio law). In this regard, the record establishes that the decision to terminate the appellant after the expiration of his medical leave was based upon the fact that the appellant had been certified disabled by his own physician, Dr. Smith, and none of the evaluating physicians had thereafter released the appellant to return to work. The appellant has failed to effectively demonstrate any basis upon which one could conclude that the "List of Concerns" had any bearing on the result. The "List of Concerns" was given by Tilow to Dr. Nizney. There is no evidence, nor does the appellant anywhere contend, that Dr. Smith ever considered the list in making his disability assessment, or that, absent the "List of Concerns," any of the physicians would have released the appellant to work notwithstanding Dr. Smith's opinion that the appellant was disabled. As for Dorna's alleged remarks, they were made after the appellant had been placed on medical leave. The record is clear that the decision to dismiss the appellant was based on the medical evidence, not anything Dorna may have said to her co-workers.

We hold, therefore, that the trial court did not err when it granted summary judgment in favor of the individual appellees, Tilow and Dorna, on the claim that they tortiously interfered with the appellant's employment relationship with Talbert House. Furthermore, we note that Talbert House, as a corporate entity, could not have been held separately liable under such a claim since it was a party to the employment contract, and a party cannot be sued in tort for interfering with its own performance. See *Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111. Thus, we hold that the trial court's granting of summary judgment in favor of Talbert House on this claim was also without merit.

## II

We turn next to the second claim which the appellant attempted to litigate, *i.e.,* defamation and invasion of privacy. The appellant contends that the "List of Concerns" prepared by Tilow was libelous, and that similar oral representations made to third persons by both Tilow and Dorna constituted actionable slander.

As the alleged defamation occurred in a business or professional context,[4] it was subject to a qualified privileged, requiring that the appellant

---

4. As noted, appellee Tilow prepared the "List of Concerns" as part of the appellant's medical review. The remarks attributed to appellee Dorna, as set forth in the affidavit of Ann Harder, were allegedly made at a staff meeting at which Dorna was specifically asked about the appellant's situation. While the facts upon which an alleged privilege depends may create a triable issue, if they are in dispute, we conclude on the record presented here that

prove not only that the representations were untrue, but that they were made with actual malice. *Evely v. Carlon* (1983), 4 Ohio St.3d 163, 4 OBR 404, 447 N.E.2d 1290; *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713. A showing of actual malice requires evidence that the alleged perpetrator, acting out of spite or ill will, made the representations with either knowledge that they were false, see *Hahn, supra,* or reckless disregard for the truth. *New York Times Co. v. Sullivan* (1976), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. In order to show a reckless disregard for the truth, there must be clear and convincing evidence that the untrue statements were made as a result of the defendant's failure to act reasonably to discover the truth. *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 180, 512 N.E.2d 979, 984.

Even in view of the standards of Civ.R. 56(C) favoring the party against whom the motion is made, our review of the record does not disclose sufficient evidence to preclude judgment in favor of the appellees on this claim. In their affidavits, a number of the CARE staff substantiated the information contained in the "List of Concerns" prepared by Tilow. More important, the evidence of record does not contradict appellee Tilow's assertion that, from the time of the appellant's medical leave until the present lawsuit, no member of the CARE staff ever expressed to Tilow his or her support for the appellant's ability to work despite the appellant's medical difficulties. Clearly, those staff members who now dispute the list's contents did not, at the time their views were sought by Tilow, express their contrary opinions. Therefore there is no basis in the record for a trier of fact to find that appellee Tilow ever wrote or said anything that he knew at the time to be untrue or probably false. Although the appellant has attempted to show that there was a personal animus between him and Tilow, it is clear that innuendo or an "inference of motive" is insufficient to show actual malice. *Evely, supra,* 4 Ohio St.3d at 169, 4 OBR at 409, 447 N.E.2d at 1295; *Hahn, supra,* 43 Ohio St.2d at 249, 72 O.O.2d at 141, 331 N.E.2d at 721. Similarly, the evidence establishes that Dorna's alleged remarks were predicated upon a misunderstanding rather than a deliberate disdain for the truth.

Finally, we turn to that part of the appellant's second claim which asserted a tortious invasion of his privacy. In order to have established such a claim, the appellant was required to produce evidence that the area intruded upon was private, and that the intrusion by the appellees was unwarranted and offensive or objectionable to the reasonable man. See *LeCrone v. Ohio*

---

both Tilow and Dorna had, as a matter or law, a business and professional right, as well as a duty, to discuss the appellant's condition.

*Bell Tel. Co.* (1963), 120 Ohio App. 129, 28 O.O.2d 374, 201 N.E.2d 533. On the state of the record, we think it beyond reasonable debate that the appellant's physical and mental condition was within the appellees' legitimate spheres of interest, so that their actions were neither so unwarranted nor so objectionable as to constitute an actionable invasion of privacy.

We conclude, therefore, that the appellant's sole assignment of error is not well taken, and that the trial court did not err when it granted summary judgment in favor of the appellees. The judgment of the trial court is, accordingly, affirmed.

*Judgment affirmed.*

UTZ, P.J., DOAN and HILDEBRANDT, JJ., concur.