Plaintiff-appellant John Doe[1] appeals from the judgment of the Medina County Court of Common Pleas that granted summary judgment to defendants-appellees Thomas Lockard ("Lockard") and Lodi Community Hospital ("LCH")[2]. This Court affirms.
 I. Facts
Doe entered into an employment contract with LCH to work as a physician specializing in general medicine. Pursuant to the agreement, Doe opened his office and began working at LCH on April 1, 1996. In May 1996, Doe entered into an agreement with Southern Ohio Emergency Physicians, P.C. ("SOE")[3] to work as a part-time independent contracting physician. SOE staffs certain emergency rooms in Ohio, including LCH, with professional medical personnel. Thus, Doe began working in LCH's emergency room, as well as other local emergency rooms, under his contract with SOE.
In September of 1996, Doe's patient load began to decline. By a letter dated January 23, 1997, Lockard, LCH's President and Chief Financial Officer, contacted Doe concerning the continued decrease in Doe's patients. Lockard proposed reducing Doe's hours until Doe could increase the number of his patients. Doe agreed to decrease his hours, but refused to take a decrease in pay. Doe contacted an attorney who, in turn, contacted LCH and informed LCH that Doe would not accept a decrease in pay.
On February 3, 1997, Lockard sent Doe a 90-day notice of termination of the contract between Doe and LCH, making Doe's employment with LCH effective until the end of the day on May 3, 1997. On April 28, 1997, Lockard sent a letter to Dr. Scott Polsky, Regional Director of SOE and director of LCH's emergency room, requesting that Doe not be assigned to work in LCH's emergency room. SOE completely terminated their agreement with Doe. Thus, Doe was no longer contracted through SOE to work in any of the local emergency rooms.
Doe filed a complaint against LCH, Lockard, and SOE asserting six claims: (1) defamation against Lockard as an individual; (2) intentional infliction of emotional distress against Lockard and LCH; (3) negligent infliction of emotional distress against LCH; (4) wrongful discharge against LCH, SOE, and ECI; (5) intentional interference with contract against Lockard and LCH; and (6) punitive damages against Lockard and LCH. Doe's complaint was based on another controversy surrounding his employment that had taken place during the same time as the foregoing events.
In early January of 1997, a credit card was stolen from a nurse's purse that had been placed in the nurses' lounge at LCH. The day following the incident, the theft was reported to Lockard. The nurse whose credit card had been stolen told Lockard that she believed a certain female LCH employee was to blame. Lockard advised the nurse to contact the Lodi police and Jim Markely, LCH's security director. A few days later Lockard personally contacted Lodi Chief of Police, Steve Sivard, concerning the incident.
On January 30, 1997, Chief Sivard contacted Lockard and asked him to come to the police station regarding the theft. At the station Lockard was shown a photograph, but could not identify the person pictured. Chief Sivard then had Lockard view a videotape of a person allegedly using the stolen credit card. Lockard told Sivard that he believed that Doe was the person pictured in the video, but that the video "was not that clear." As a result, Chief Sivard asked Lockard to arrange a meeting of other hospital employees who were familiar with Doe so that they could also view the videotape. One of the individuals that Lockard chose for the viewing was Dr. Polsky, SOE's director. Upon viewing the tape, the other employees individually expressed their opinion that the person pictured in the video resembled Doe.
Doe timely appeals, asserting six assignments of error which have been rearranged for ease of discussion.
 II. Standard of Review
Each of Doe's six assignments of error concerns the trial court's grant of summary judgment. Accordingly, our standard of review for each assignment is the same standard used by the trial court. Perkins v.Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 III. Assigned Errors FIRST ASSIGNMENT OF ERROR SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AND THE DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
Doe's entire argument in his first assignment of error is contained in the last paragraph, which reads: "Based upon the genuine issues of material fact yet to be resolved, the Trial Court's grant of summary judgment in favor of the Defendants should be reversed."
"It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record. See App.R. 16(A)(7)." State v.Taylor (Feb. 9, 1999), Medina App. No. 2783-M, unreported. Doe has not even attempted to indicate what issue of material fact remains to be litigated. Because Doe has failed to demonstrate any error by the trial court in his first assignment of error, it is hereby overruled.
 SECOND ASSIGNMENT OF ERROR SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED IN FAVOR OF LODI AND LOCKARD BECAUSE THE STATEMENTS CONSTITUTED DEFAMATION AND ARE NOT PROTECTED BY A QUALIFIED PRIVILEGE.
In his second assignment of error, Doe argues that the trial court erred by granting Lockard's motion for summary judgment on his defamation claim. He contends that there were genuine issues of material fact as to whether Lockard defamed him by (1) telling the police that Doe was the person pictured in the videotape, (2) showing Dr. Polsky the videotape, and by (3) telling Dr. Polsky that Doe was a thief. This Court disagrees.
In order to prevail in a defamation case, a plaintiff who is a private person must prove five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff." Gosden v. Louis (1996), 116 Ohio App.3d 195, 206, citingAkron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992),81 Ohio App.3d 591, 601.
When an act of alleged defamation has occurred in a business or professional context by someone whose job gives to them a legitimate interest in the matter, it is subject to a qualified privilege. The result is that the plaintiff must prove not only that the representations were untrue, but that they were made with actual malice. See Contadinov. Tilow (1990), 68 Ohio App.3d 463, 469-470, citing Evely v. Carlon
(1983), 4 Ohio St.3d 163 and Hahn v. Kotten (1975), 43 Ohio St.2d 237. A showing of actual malice requires evidence that the alleged perpetrator, acting out of spite or ill will, made the representations either with knowledge that they were false, or with reckless disregard for the truth. See Hahn v. Kotten (1975), 43 Ohio St.2d 237; New York Times Co.v. Sullivan (1976), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.
To demonstrate a reckless disregard for the truth the plaintiff must present clear and convincing evidence that the false statements were made as a result of the defendant's failure to act reasonably to discover the truth. See Lansdowne v. Beacon Journal Publishing Co. (1987),32 Ohio St.3d 176, 180. However, in order for the defendant to fail to act reasonably in such a situation, he or she must first possess some degree of subjective doubt concerning the statements. Id. A person speaking with moral certainty about a subject with which he or she has a qualified privilege, no matter how misguided, cannot be said to be acting with actual malice. Id. The Ohio Supreme Court has held that:
 [i]n order to establish "reckless disregard," the plaintiff must present sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of his publication. Thus, the failure to investigate before publishing will not defeat a qualified privilege, unless the defendant entertained serious doubts as to the truth of his publication. Thus, the failure to investigate before publishing will not defeat a qualified privilege, unless the defendant entertained serious doubts as to the truth of the statements or the veracity or accuracy of his sources.
 A B-Abell v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 12-13, citing St. Amant v. Thompson (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, and Dale v. Ohio Civ. Serv. Emp. Assn. (1991), 57 Ohio St.3d 112.
Examples of "reckless disregard" are situations in which the defendant fabricated the story, relies on his or her imagination, or based the statements on unverified, anonymous sources. See id. Because mere negligence is not enough to establish actual malice, the test for determining whether the defendant entertained "serious doubt" is not an objective one — i.e., whether a reasonable person should have questioned the truth of his or her statements. Rather, the test is a subjective one, requiring the plaintiff to produce clear and convincing evidence that the defendant "in fact" entertained serious doubts about the truth of his statements or the sincerity or accuracy of his sources. See id.
Having reviewed the record, we hold that Doe failed to present any evidence that Lockard acted with malice in telling the police that Doe was the person pictured in the videotape. The record lacks any evidence that Lockard "in fact" entertained serious doubts as to whether Doe was the person pictured. Lockard testified in his deposition that he believed the man pictured was, or strongly resembled, Doe.
Likewise, we find that Doe failed to present evidence that Lockard acted with malice in showing Dr. Polsky the videotape. Lockard testified that he organized the meeting to view the videotape at the request of Lodi's Chief of Police. The Chief's deposition testimony corroborates this fact. This Court finds that Lockard's choice of selecting Dr. Polsky to view the videotape was reasonable; the evidence shows that Dr. Polsky hired Doe to work for SOE and that Dr. Polsky worked with Doe a couple of times each month.
Finally, Doe did not present any evidence that Lockard told Dr. Polsky that "Doe is a thief." Dr. Polsky's deposition testimony establishes that Lockard never said anything of that nature to him.
Construing the evidence most strongly in favor of Doe, we find that the record is devoid of any evidence by which reasonable minds could have concluded that Lockard defamed Doe. For this reason, we find there are no genuine issues of material fact and the lower court did not err in concluding that Lockard was entitled to judgment as a matter of law. Doe's second assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR SUMMARY JUDGMENT WAS ERRONEOUSLY GRANTED BECAUSE THE PLAINTIFF HAS PROVEN WRONGFUL DISCHARGE BY LODI AND LOCKARD. In his fifth assignment of error, Doe charges that because he proved that he had been wrongfully discharged the trial court erred in granting summary judgment in favor of LCH and Lockard. We find otherwise.
Doe asserts that, pursuant to his employment contract, he could only be discharged from his employment at LCH if his license was suspended or revoked, there was a disciplinary action taken against him, if he was convicted of a criminal act, or if he became totally disabled. Because none of these "causes" existed, Doe argues that his termination was wrongful.
Section 2 of the employment contract between LCH and Doe, entitled "TERMINATION OF AGREEMENT," provides:
 This Agreement may be terminated by either party upon written notification personally served upon the other party, or service by U.S. Certified mail, if said personal service cannot be made. Said termination shall be ninety (90) days after said service or at any time which may be agreeable to both parties. The employer shall have the right to terminate the Agreement for cause without notice. Cause includes, but is not limited to, such contingencies or the suspension or loss at any time by [Doe] of his license to practice medicine in the State of Ohio; disciplinary action by any medical authority or conviction of a criminal act or total disability or incapacity.
The trial court found that Doe was an at-will employee and that the employment contract provided that either party could terminate the agreement without cause, or for any reason, upon giving a ninety-day notice, and that LCH could terminate the agreement without prior notice for one of the listed causes. We agree.
Doe further contends that even if this Court determines that he was an at-will employee, his termination was wrongful and summary judgment was inappropriate. Specifically, Doe avers that he could not be discharged without cause because the facts and circumstances surrounding the employment agreement altered the terms of the contract such that he could only be terminated for one of the listed causes, and that promissory estoppel precluded his discharge.
Employment which is "at-will" is terminable at any time for any reason by either party. Henkel v. Council Education Research (1976),45 Ohio St.2d 249. However, under certain conditions, an employment-at-will relationship may be considered to be modified or altered such that the employer's right to peremptorily discharge an employee is limited. These limitations, that is exceptions to the employment-at-will doctrine, are enumerated in Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100. Under the first exception, employee handbooks, company policy, and oral representations may be sufficient to create implied or express contractual provisions that alter the terms for discharge. Under the second exception, an employer's right to discharge may be limited by representations or promises made to the employee, which fall within the doctrine of promissory estoppel. Id. at 103-104. Doe advances arguments under both exceptions.
Doe argues that oral representations were made to him which sufficiently altered the terms for discharge such that LCH could only terminate his employment for one of the listed causes. In support, Doe refers to a conversation he had with Lockard prior to signing the employment agreement. Doe asserts that Lockard stated that Lockard and LCH were "looking for a long-term commitment from [Doe] for the community, for a family practice physician to come there and stay in the community." Doe further alleges that, during a dinner party, a number of hospital board members also told Doe that they were looking for Doe to make a long-term commitment to LCH.
The trial court found that these statements did not promise life-long job security and that the statements were "oral expressions of hope." The court further opined that these expressions were typical of statements made surrounding most employment relationships. We agree and find that the trial court correctly determined as a matter of law that the "oral representations" could not serve as the basis for finding that Doe's status as an employee-at-will had been altered.
Under the second Mers exception, an employer's right to discharge an employee may be limited by representations or promises made to the employee which give rise to the application of promissory estoppel.Mers, supra, at 104. In support of the promissory estoppel exception to at-will-employment contracts, Doe points to the same statements analyzed above. Mers explained the application of promissory estoppel in the context of employment-at-will situations as follows:
 We therefore hold that where appropriate the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of an employee does induce such action or forbearance, if injustice can be avoided only by the enforcement of the promise.
 The tests in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. (Emphasis added.)
 Id. We note that Mers pertains to oral agreements. We need not decide whether Mers is applicable to written employment-at-will agreements, however, because we find that the statements were vague references, and not of the specific type of oral representations Mers recognized as creating a situation of promissory estoppel.
In Mers, the employer made specific oral representations that Mers would be reinstated with back pay if the criminal charges against him were resolved in his favor. Mers claimed that he relied on this specific promise to his detriment. Since the criminal charges were ultimately dismissed, a factual issue was raised as to whether a dismissal satisfied the employer's condition of a favorable resolution. Unlike Mers, wherein the oral promise made to the employee was very specific as to the condition of the employee's reinstatement, Doe has not identified a specific promise made to him which would indicate that Doe was hired, as he contends, for his life-time and that he could only be fired if one of the "cause" provisions came to fruition. See Smith v. St. ElizabethMedical Ctr. (Oct. 14, 1986), Montgomery App. No. 9676, unreported (holding that "generous promises of promotion and benefits for continued service are not in themselves inconsistent with an employment-at-will agreement which may be terminated by either party at any time for any reason. While in effect both parties may rely upon such an agreement and enforce it but they have no right to rely upon its continuance.")
Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of Lockard and LCH since it correctly determined, as a matter of law, that Doe's employment was terminable at will at all times by either party. Accordingly, Doe's fifth assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE PLAINTIFF HAS PROVEN HIS CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SO THAT SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED.
In his third assignment of error, Doe argues that the trial court erred in granting Lockard and LCH's motion for summary judgment because there is a genuine issue with regard to whether Lockard's conduct constituted intentional infliction of emotional distress. This Court is of the opposite opinion.
In order to sustain an action for intentional infliction of emotional distress Doe must show there are genuine issues of material fact in the following elements: 1) that Lockard either intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to Doe; 2) that Lockard's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as utterly intolerable in a civilized community; 3) that Lockard's actions were the proximate cause of Doe's psychic injury; and 4) that the mental anguish Doe suffered is serious and of a nature that no reasonable man could be expected to endure. See Restatement of Torts 2d 77, Section 46, comment j; Yeagerv. Local Union 20 (1983), 6 Ohio St.3d 369.
In employment-related situations, the establishment of infliction of emotional distress requires more than just verbal abuse. The evidence establishing infliction of emotional distress in an employment situation must follow the guidelines as enunciated by the Ohio Supreme Court:
 It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.
Yeager, supra, at 374-375.
 Doe insists that Lockard's handling of the videotape constituted extreme and outrageous behavior. He further asserts that "it is arguable that Lockard's wrongful discharge of [Doe] constituted extreme and outrageous conduct." Pursuant to our disposition of Doe's fifth assignment of error, we reject Doe's contention that Lockard and LCH intentionally caused him emotional distress in improperly terminating his employment. We further find that Doe failed to present evidence that Lockard's conduct concerning the videotape constituted evidence of outrageous conduct worthy of causing a legal infliction of emotional distress. Furthermore, Doe failed to present evidence that he suffered serious emotional distress. In fact, Doe testified that neither he nor his wife, who also alleged injury, ever went to a doctor for their suffering. See Sheets v. Rockwell Internatl. Corp.
(1990), 68 Ohio App.3d 345.
Accordingly, we find the trial court properly granted summary judgment in favor of Lockard and LCH on Doe's claim of intentional infliction of emotional distress.
 FOURTH ASSIGNMENT OF ERROR SUMMARY JUDGMENT WAS INCORRECTLY GRANTED BECAUSE THE PLAINTIFF HAS PROVEN A BREACH OF CONTRACT, SATISFYING HIS CLAIM FOR INTENTIONAL INTERFERENCE WITH A CONTRACT.
 Doe avers that the trial court erred in granting summary judgment in favor of LCH and Lockard on his claim for intentional interference with contract. This Court disagrees.
Doe's claim alleged that LCH and Lockard had intentionally interfered with Doe's contract with SOE. In order to establish a claim for tortious interference with contract Doe must prove: (1) the existence of his contract with SOE, (2) Lockard's and LCH's knowledge of the contract, (3) Lockard's and LCH's intentional procurement of the contract's breach, (4) lack of justification for the intentional procurement of the breach, and (5) resulting damages. Fred Siegel Co., L.P.A. v. Arter Hadden
(1999), 85 Ohio St.3d 171, paragraph one of the syllabus, affirming and following Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, paragraph two of the syllabus. Furthermore, a causal connection must be established between the breach of contract and the actions of the defendant. Metro. Life Ins. Co. v. Triskett Illinois, Inc. (1994),97 Ohio App.3d 228, 236, citing Contadino v. Tilow (1990),68 Ohio App.3d 463.
Although we disagree with the trial court's rationale, we find that summary judgment was appropriate. The trial court explained that Doe's contract with SOE contained a provision which permitted SOE to terminate DOE's employment if any facility at which Doe is scheduled requests Doe's removal from the schedule. The court then examined a letter, written by Lockard to SOE, in which Lockard requested that Doe be removed from LCH's emergency room schedule. The court concluded that Doe's termination was a result of Lockard's request, and therefore, Doe's termination "was not a breach of [Doe's] contract with [SOE] but simply the enforcement of an express contractual provision of said contract, which contract [Doe] agreed to by signing it."
This finding is not supported by the record. Although both the contract between SOE and Doe and the April 28, 1997 letter appear in the record, there is no evidence as to SOE's reason for terminating Doe's contract. The trial court expressly acknowledged this fact in examining Doe's claim against SOE for breach of contract, which is not at issue on appeal.
Doe's contract with SOE is an at-will contract, it permits either Doe or SOE to terminate the agreement "with or without cause, upon thirty (30) days written notice." Because SOE complied with the thirty day notice provision, regardless of its reason for doing so, Doe cannot prove that SOE breached the contract.
Accordingly, we find that summary judgment was proper on Doe's intentional interference of contract claim. The fourth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR SINCE THE PLAINTIFF HAS PROVEN THAT PUNITIVE DAMAGES ARE WARRANTED, SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED.
Based on our disposition of Doe's first, second, third, fourth, and fifth assignments of error, we overrule his sixth.
 IV. Summary
The judgment of the court of common pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 __________________ CARR, Judge
BATCHELDER, P. J., SLABY, J. CONCUR
[1] In order to protect his privacy, the trial court granted appellant-plaintiff permission to maintain his cause of action under the pseudonym "John Doe."
[2] The trial court also granted summary judgment in favor of Southern Ohio Emergency Physicians and Emergency Consultants, both of which Doe had named as defendants. Although Doe named both companies as appellees in his notice of appeal, he has not raised an issue on appeal relating to the grant of summary judgment in favor of either company.
[3] Doe alleged that Emergency Consultants, Inc. ("ECI") was also a party to this contract. The trial court granted summary judgment in favor of ECI who disputed this fact. As previously noted, whether the trial court properly granted ECI summary judgment is not an issue before this Court. Therefore, we omit ECI in the facts of this opinion.