DECISION.
{¶ 1} Plaintiff-appellant Dawn Miller appeals from the trial court's entry of summary judgment in favor of defendants-appellees Cincinnati Children's Hospital Medical Center ("CHMC"), Miller's former employer, and Thomas Kinman, Miller's former supervisor at CHMC.
 {¶ 2} Miller brought a cause of action alleging invasion of privacy against CHMC and Kinman. Her claim stemmed from comments Kinman had made to her, in the scope of her employment, which she felt had intruded on her private affairs. Kinman's comments concerned Miller's care of her infant granddaughter and her work performance as it was affected by her responsibilities for her granddaughter.
 {¶ 3} Because the trial court properly entered summary judgment in favor of CHMC and Kinman, we affirm
 Statement of Facts {¶ 4} Miller was employed at CHMC from 1985 until 2003. During her employment, she successfully rose to become the director of two divisions at CHMC, Materials Management and Clinical Engineering.
 {¶ 5} In December of 1999, Miller's young daughter gave birth to a medically fragile infant who underwent a heart transplant at the tender age of one. This heart transplant was performed at CHMC, and it received attention in the hospital newsletters as well as in the local media. Miller participated in the media coverage, giving interviews when requested.
 {¶ 6} After her granddaughter's birth, Miller sought guardianship of the infant and eventually adopted her. Kinman often asked Miller about her granddaughter, and he cautioned her against seeking guardianship. Kinman's comments concerning the infant's heart transplant were somewhat pessimistic.
 {¶ 7} But Kinman also facilitated Miller's care of her grandchild by approving a "telework" arrangement that allowed Miller to work several days from home and still care directly for the infant. Some time after Miller began "teleworking," complaints began to circulate at CHMC about her job performance.
 {¶ 8} Miller and Kinman discussed these issues during weekly meetings. Kinman told Miller that he felt she could not handle the stress associated with her granddaughter on top of managing two divisions. He ultimately encouraged Miller to relinquish control of one of her divisions.
 {¶ 9} The relationship between Kinman and Miller continued to deteriorate, and Miller sought emotional counseling. She eventually took a medical leave of absence and was advised by her therapists that she could return to work if she were not subject to Kinman's supervision. CHMC declined to make such an arrangement, but did offer counseling to resolve the tension between Miller and Kinman. Miller never returned to work, but instead sued CHMC and Kinman.
 {¶ 10} In granting summary judgment to CHMC and Kinman, the trial court concluded that Miller had not experienced an intrusion into her private affairs as was contemplated by the tort of invasion of privacy. The trial court additionally concluded that Kinman and CHMC had a legitimate interest in matters that affected Miller's work, and that a person of ordinary sensibilities would not have suffered mental anguish or humiliation as a result of Kinman's comments.
 {¶ 11} Miller has raised two assignments of error on appeal. She alleges that the trial court made improper findings of fact and that the trial court erred in granting summary judgment to CHMC and Kinman. Because these assignments are related, we address them together.
 Kinman's Argument {¶ 12} Kinman does not dispute that he often discussed the condition of Miller's grandchild with her. But he asserts that it was Miller who openly discussed the child's situation. In support, he relies on Miller's willing media participation concerning her grandchild. He further argues that his inquiry into Miller's care of her grandchild was necessitated by his duties as Miller's supervisor because of the numerous complaints he had received about her.
 Standard of Review {¶ 13} This court reviews a grant of summary judgment de novo, without any deference to the trial court's decision.[1] Summary judgment may appropriately be granted only when there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the non-moving party, permits only one reasonable conclusion that is adverse to the non-moving party.[2]
 The Law of Invasion of Privacy {¶ 14} The Ohio Supreme Court first recognized the tort of invasion of privacy in Housh v. Peth, a case that centered on the debt-collection practices employed by a collection agent.[3] Peth identified three types of invasion of privacy, including "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."[4]
 {¶ 15} This concept has been adopted by the Restatement of Torts. The Restatement recognizes an intrusion upon seclusion as a type of invasion of privacy, and it provides that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."[5]
 {¶ 16} This court has considered the elements for a claim of tortious invasion of privacy in Contadino v. Tilow, a case with several factual similarities to the case before us.[6] InTilow, we discussed the type of invasion-of-privacy claim involving an intrusion upon one's seclusion, although we did not label it as such. We held that, to establish such a claim, a plaintiff must "produce evidence that the area intruded upon was private, and that the intrusion * * * was unwarranted and offensive or objectionable to the reasonable man."[7] We thus established a two-prong standard requiring an intrusion upon private matters that would be offensive to a reasonable person.
 "Private Area" {¶ 17} Applying the standard to this case, we note that Miller displayed and discussed the care of her medically fragile grandchild both with her coworkers and with the community in general. The record does not reflect any evidence that she ever declined publicity or declined to discuss the child's progress. Indeed, she requested special privileges from her employer to work at home to better deal with her granddaughter's condition.
 {¶ 18} Further, we can find no evidence that Kinman overstepped the bounds of his duties as Miller's supervisor when, after receiving complaints from other employees, he questioned her ability to discharge the responsibilities associated with managing two divisions. "Where * * * the act complained of is within the scope of a defendant's duties, a cause of action in tort for monetary damages does not lie."[8] Kinman would have been derelict in his own duties had he ignored the complaints regarding Miller and allowed her to continue her telework unquestioned.[9]
 {¶ 19} We do not presume that every comment Kinman made concerning Miller's granddaughter was associated with his duties as her supervisor, although many of the comments were. Evidence that Kinman had acted within the scope of his supervisory duties, coupled with Miller's own publication of her granddaughter's condition, demonstrate that Kinman did not intrude upon a private area.
 The Critical "And" {¶ 20} Because we have concluded that Kinman's comments and actions did not intrude upon Miller's private affairs, we need not address whether they would have offended a person of reasonable sensibilities.
 {¶ 21} The trial court, in its conclusion that Kinman's comments would not have caused a person of ordinary sensibilities mental suffering, arguably made a subjective determination concerning a disputed and material fact. But this finding was irrelevant, as there had been no intrusion into Miller's private affairs. The two-prong test enunciated in Tilow must be read in the conjunctive, and failure to establish an intrusion into Miller's private affairs necessarily ends our inquiry.
 Conclusion {¶ 22} Miller enjoyed a good working relationship with Kinman for the years before and the period immediately after the birth of her granddaughter. She participated willingly in the publicity surrounding her granddaughter's heart transplant and willingly became the infant's primary caregiver thereafter. Kinman aided her in discharging her responsibilities both to her granddaughter and to CHMC by approving her teleworking arrangement. Kinman's position as Miller's supervisor required him to inquire into the developing problems associated with Miller's teleworking.
 {¶ 23} These facts clearly demonstrated that Miller had not experienced an actionable invasion of privacy. Because no genuine issues of material fact existed, and because CHMC and Kinman were entitled to judgment as a matter of law, we affirm the trial court's entry of summary judgment.
Judgment affirmed.
Hildebrandt, P.J., and Sundermann, J., concur.
[1] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.
[2] State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589, 639 N.E.2d 1189.
[3] (1956), 165 Ohio St. 35, 133 N.E.2d 340.
[4] Id., paragraph two of the syllabus.
[5] Restatement of the Law 2d, Torts (1965), Section 652(B).
[6] (1990), 68 Ohio App.3d 463, 589 N.E.2d 48.
[7] Id. at 470 (emphasis added).
[8] Id. at 467.
[9] See, also, Hamrick v. Wellman Prod. Group., 9th Dist. No. 03CA0146-M, 2004-Ohio-5477, at ¶ 37 (holding that the defendant company "had an obligation to investigate the situation and respond to it. [The company] cannot be held liable for invasion of Appellant's privacy where it had a duty to investigate and take action to prevent further complaints of sexual harassment").